**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

WILLIAM CHAD WILLIAMS,

               Plaintiff,

v.                                         Case No. 6:14-cv-1070-Orl-37KRS

WAYNE IVEY; and JEREMY PILL,

               Defendants.

---

**ORDER**

This cause is before the Court on the following:

1.     Defendants' Motion for Summary Judgment (Doc. 39), filed September 2, 2015;

2.     Plaintiff's Response to Defendant Deputy Jeremy Pill's and Brevard County Sheriff Wayne Ivey's Motion for Summary Judgment (Doc. 52), filed October 29, 2015; and

3.     Defendant's Reply Memorandum in Support of Motion for Summary Judgment (Doc. 53), filed November 6, 2015.

This excessive force action arises from an incident that occurred on July 3, 2010, during which Plaintiff William Chad Williams alleges that he was stopped, detained, and severely injured by Brevard County police officer, Defendant Jeremy Pill ("**Deputy Pill**") ("**July 2010 Incident**"). (Doc. 25, ¶ 10.) Plaintiff's operative Complaint alleges two alternative state law claims for excessive force against Deputy Pill in his individual capacity ("**Count I**") and the Brevard County Sheriff, Wayne Ivey ("**Sheriff Ivey**"), in his

official capacity ("**Count II**"),[1] as well as one civil rights claim against Deputy Pill in his individual capacity pursuant to 42 U.S.C. § 1983 ("**Count III**"). (Doc. 25.) Defendants now move for summary judgment on all of Plaintiff's claims, including the issue of Plaintiff's entitlement to compensatory damages for the hospital bill incurred during Plaintiff's hospitalization at Cape Canaveral Hospital on July 3–4, 2010 ("**Hospital Bill**"). (Doc. 39.) Plaintiff responded (Doc. 52), and Defendants replied (Doc. 53).

Upon consideration, the Court finds that: (1) Defendants' Motion as to Count I of Plaintiff's Complaint is due to be denied as moot; (2) Defendants' Motion as to Count II of Plaintiff's Complaint is due to be denied as moot; (3) Defendants' Motion as to Count III is due to be denied on the merits; and (4) Defendants' Motion as to the Hospital Bill is due to be granted.  In resolving Defendants' Motion for Summary Judgment, the Court construes the record evidence in the light most favorable to Plaintiff—the non-moving party, *see Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), and discerns the facts as follows.

### THE FACTS VIEWED IN THE LIGHT MOST FAVORABLE TO PLAINTIFF

On the evening of July 3, 2010, Plaintiff was riding his bicycle home from a store in Merritt Island, Florida, while holding a bag containing ice cream. (Doc. 40, pp. 10–12, 14; *see also* Doc. 51, p. 2.) At approximately 11:09 p.m., Deputy Pill conducted a traffic stop of Plaintiff near the corner of Lucas Road and North Courtenay Parkway on the grounds that Plaintiff's bicycle did not have a headlight and Plaintiff did not have his hands on the handlebars. (Doc. 42-1, p. 1; Doc. 42-2, p. 7; *see also* Doc. 51, p. 2.) Plaintiff

---

[1] Plaintiff's claim against Sheriff Ivey is based on a theory of vicarious liability. (Doc. 25, ¶ 20.)

admits that his bicycle did not have a headlight, but he avers that his hands were on the handlebars. (Doc. 40, pp. 13–14.) Upon seeing Deputy Pill's patrol car lights, Plaintiff initially stopped his bicycle and put down the kickstand. (*Id.*) When Deputy Pill exited the patrol car, Plaintiff ran away from Deputy Pill.[2] (Doc. 40, pp. 32–33; Doc. 51, p. 2.) Deputy Pill chased Plaintiff and ordered him to stop running. (Doc. 40, p. 34.) Plaintiff subsequently complied. (Doc. 51, p. 2; *see also* Doc. 40, pp. 32–34.) He had run approximately forty feet. (Doc. 51, p. 2.)

After Plaintiff came to a halt, Deputy Pill "tackled [him] into a chain link fence," knocking over the fence. (*See* Doc. 51, p. 2; *see also* Doc. 40, p. 35.) Plaintiff landed on top of the fence on his stomach, and Deputy Pill landed on Plaintiff's back. (Doc. 40, pp. 35, 41.) At this time, Deputy Pill handcuffed Plaintiff's left arm behind his back. (*Id.* at 36–37; Doc. 51, p. 3.) Deputy Pill then punched Plaintiff repeatedly in the back of the head and face, "struck [Plaintiff] with his elbows", and struck Plaintiff several times in the torso with his knees ("**Physical Altercation**"). (Doc. 51, p. 3; *see also* Doc. 40, p. 39.) During the Physical Altercation, Plaintiff did not resist in any way and remained on the ground, with his left hand handcuffed behind his back. (Doc. 51, p. 3; *see also* Doc. 40, pp. 40, 42–43.)

Shortly thereafter, a second deputy—Deputy Michael Helms ("**Deputy Helms**")— arrived at the scene. (*See* Doc. 40, pp. 40–42, 80–81; *see also* Doc. 42, ¶ 5, Doc. 42-3, p. 2.) Deputy Pill and Deputy Helms (collectively, "**Deputies**") each held one of Plaintiff's arms and picked him up from the ground. (Doc. 40, p. 81.) As soon as the Deputies

---

[2] Plaintiff contends that he ran because he recognized Deputy Pill from previous encounters and was afraid of him. (Doc. 40, p. 16; Doc 51, p. 2.)

released Plaintiff's arms, Plaintiff fell face first into the dirt. (*Id.*) The Deputies subsequently took Plaintiff toward a patrol car, used a water bottle to wash the dirt off him, and sat Plaintiff down on the side of the street. (*Id.* at 80.)  Deputy Pill arrested Plaintiff at 11:17 p.m. (*see* Doc. 42, ¶ 5; Doc. 42-3, p. 2), and Plaintiff was transported to Cape Canaveral Hospital ("**CCH**") (Doc. 40, p. 48, 62).

Plaintiff was admitted to CCH at 11:52 p.m., where he was diagnosed with a closed orbital fracture, hematoma on his left arm, and multiple trauma, contusions, and abrasions ("**July 2010 Hospitalization**"). (Doc. 39-1, p. 10.) He was discharged into police custody at 3:50 a.m. on July 4, 2010, and taken to the Brevard County Jail. (*Id.*; Doc. 42-2, p. 8.)

As a result of the incident, Plaintiff also sustained a broken nose, a broken rib, nerve damage, and cosmetic damage. (Doc. 51, p. 3; Doc. 40, pp. 74–76). Since the Physical Altercation, Plaintiff continues to suffer from constant headaches, migraines, and extreme pain. (Doc. 40, pp. 74.)

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant carries its burden by showing that there is an absence of evidence supporting the non-movant's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Which facts are

material depends on the underlying substantive law. *Id.* As previously noted, the Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *See Battle*, 468 F.3d at 759. However, the Court should not deny summary judgment "when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## DISCUSSION

### I.    Counts I and II

In Counts I and II, Plaintiff asserts two alternative state law claims for excessive force against Deputy Pill in his individual capacity and Sheriff Ivey in his official capacity. (Doc. 25, ¶¶ 13–21.) Defendants move for summary judgment on the ground that: (1) Deputy's Pills use of force was justified by Plaintiff's resistance to arrest; (2) Deputy Pill is entitled to immunity from suit under Florida Statutes § 768.28(9) because he did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property; and (3) Plaintiff failed to comply with the mandatory pre-suit notice provisions under Florida Statutes § 768.28(6). (Doc. 39, p. 2.) In response, Plaintiff concedes that the Court may dismiss his claims under Counts I and II with prejudice. (Doc. 52, p. 5 ("**Concession**").) The Court construes Plaintiff's Concession as a request for voluntary dismissal by court order pursuant to Federal Rule of Civil Procedure 41(a)(2), which is due to be granted. Counts I and II of Plaintiff's Complaint are, therefore, due to be dismissed with prejudice. Consequently, Defendant's motion for summary judgment as to Counts I and II is due to be denied as moot. Moreover, because Count III—the only remaining Count—is directed at Deputy Pill only, Sherriff Ivey

is due to be terminated as a party to the action.

## II.    Count III

In Count III, Plaintiff asserts a § 1983 claim against Deputy Pill in his individual capacity, alleging that Deputy Pill deprived Plaintiff of his rights under the Fourth Amendment to be secure in his person and free from the use of unreasonable force. (Doc. 25, ¶¶ 22–31.) Deputy Pill moves for summary judgment on the ground that he is entitled to qualified immunity. (Doc. 39, ¶ 6.)

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*; *see also Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012). To do so, the plaintiff must make the following two-part showing: (1) that the facts of the case make out a violation of a constitutional right; and (2) that the constitutional right was "clearly established" at the time of the putative misconduct.[3] *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "This inquiry is undertaken in light of the specific context of the case, not as a broad

---

[3] The Court may address the prongs of the qualified immunity inquiry in any order. *Pearson*, 555 U.S. at 236. However, the United States Supreme Court encourages courts to address the constitutional violation prong first so as to develop a body of clearly established law on the often fact-specific inquiries that arise in the context of § 1983 claims. *See id.*

general proposition." *Terrell*, 668 F.3d at 1250 (citation omitted). "When conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005). This construction "eliminates all issues of fact" such that "the court has the plaintiff's best case before it." *Id.*

Here, the parties do not dispute that Deputy Pill was acting within his discretionary authority at the time of the July 2010 Incident. (*See* Doc. 39, pp. 3, 12; Doc. 52.) Thus, the burden is on Plaintiff to show that Deputy Pill violated a constitutional right and that the right was clearly established at the time of the July 2010 Incident. *See Terrell*, 668 F.2d at 1250; *see also Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).

To establish the violation of a constitutional right, Plaintiff avers that Deputy Pill violated his Fourth Amendment right to be free from the use of excessive force in the course of an arrest. (*See* Doc. 25, ¶ 25.) Specifically, Plaintiff contends that Deputy Pill applied excessive force when he punched Plaintiff repeatedly "with a closed fist in the back of the head," "struck [Plaintiff] with his elbows," and "performed three or four knee strikes to [Plaintiff's] torso" even though Plaintiff was no longer resisting and was lying on the ground on his stomach. (*See* Doc. 51, p. 3; Doc. 52, p. 4; *see also* Doc. 40, p. 39.) Excessive force claims in the context of an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard, which balances the severity of the force used by an officer against the need for the use of force. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The need for force is determined based on the totality of the circumstances presented to the officer, with particular attention paid to three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

Construing the facts in the light most favorable to Plaintiff for the purpose of Deputy Pill's Motion, the Court finds that Deputy Pill's actions were wholly disproportionate to the force needed to effectuate Plaintiff's arrest and were, therefore, objectively unreasonable. At the time of the Physical Altercation, Plaintiff had abandoned his prior attempt to flee, submitted to arrest, and was lying on the ground underneath Deputy Pill, partially handcuffed. (Doc. 51, pp. 2–3.) Under these circumstances, Plaintiff posed no discernable threat to Deputy Pill and, at most, posed a minimal risk of resuming flight. Yet despite Plaintiff's nonresistance, Deputy Pill punched Plaintiff repeatedly in the back of the head and performed elbow and knee strikes on Plaintiff. On this version of the events, the Court finds that no reasonable officer on the scene would find Deputy Pill's actions during the Physical Altercation necessary or reasonable. *See Graham*, 490 U.S. at 396–97. Deputy Pill's actions were, therefore, objectively unreasonable and constitute a violation of Plaintiff's Fourth Amendment right to be free from excessive force during the course of an arrest.

The Court now turns to the second part of the test—whether the state of the law at the time clearly established that Deputy Pill's actions during the Physical Altercation were unlawful.

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has

> previously been held unlawful, but it is to say that in the light of pre-
> existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citations omitted). Controlling, materially similar case law can provide clearly established law, as can precedent that establishes a broader constitutional principle that is clearly applicable to the facts of the present case. *See Morton v. Kirkwood*, 707 F.3d 1276, 1282 (11th Cir. 2013).

A review of the pertinent case law from the United States Court of Appeals for the Eleventh Circuit convinces the Court that a reasonable officer in Deputy Pill's position would have been on notice that the strikes he delivered to Plaintiff's head, face, and torso under the circumstances of the Physical Altercation would constitute excessive force. *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997), for example, establishes that applying gratuitous force to a nonresistant suspect after he has submitted to arrest is objectively unreasonable under the Fourth Amendment. *See* 127 F.3d at 1418–20. In *Smith*, a police officer, responding to a tip that three individuals had been seen with cocaine at the plaintiff's mother's house, confronted the plaintiff while he was eating lunch in the front yard. *See id* at 1417–18. Like Plaintiff, the *Smith* plaintiff initially fled into the surrounding neighborhood. *Id.* at 1418. Eventually, however, he returned and, "[a]fter first pretending to run again, [he] docilely submitted to arrest upon [the officer's] request for him to 'get down.'" *Id.* The officer then approached the plaintiff, put his knee on the plaintiff's back and, despite the plaintiff's protestations, broke his arm "with a grunt and a blow." *Id.* In the excessive force case that followed, the Eleventh Circuit denied the officer qualified immunity in spite of his argument that the plaintiff's previous resistance justified heightened force. *See id.* at 1419–20. In so holding, the court emphasized that the officer's actions were "obviously unnecessary to restrain even a previously fractious

arrestee." *Id.* at 1420.

In addition to *Smith*, several Eleventh Circuit cases decided in the decade preceding Plaintiff's arrest establish the broad constitutional principle that applying severe force to a suspect who no longer poses a threat is objectively unreasonable under *Graham. See Hadley v. Gutierrez*, 526 F.3d 1324, 1333–34 (11th Cir. 2008) ("Applying 'the excessive force standard would inevitably lead every reasonable officer . . . to conclude that the force' used here—punching a non-resisting criminal suspect for no apparent reason other than malice—is not protected by our constitution."); *see also Lee*, 284 F.3d at 1199 (finding that striking an arrestee after she had been fully secured was "wholly unnecessary to any legitimate law enforcement purpose"); *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000) (denying qualified immunity to officers who purportedly beat a nonresisting, handcuffed suspect); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (denying qualified immunity to an officer who commanded his dog to attack a suspect after the suspect had surrendered and laid down on the ground). Accordingly, based on *Smith* and the precedent cited above, the Court finds that the law at the time of the July 2010 Incident clearly established that the type of force Deputy Pill used during Plaintiff's arrest—construed in the light most favorable to Plaintiff—was objectively unreasonable under the Fourth Amendment.

In sum, the Court finds that under the version of facts most favorable to Plaintiff, a reasonable jury could find that Deputy Pill violated Plaintiff's clearly established Fourth Amendment right to be free from the use of excessive force during the course of an arrest when he struck Plaintiff with his fists, elbows, and knees after Plaintiff had already submitted to arrest, had one hand handcuffed, and was no longer resisting. As such,

genuine issues of material fact preclude granting Deputy Pill's Motion as to the issue of qualified immunity. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248. Therefore, Deputy Pill's motion for summary judgment as to Count III of the Complaint is due to be denied.

### III. Hospital Bill for the July 2010 Hospitalization at CCH

Finally, the Court turns to the Defendants' motion for summary judgment on a discrete damages issue. In his Complaint, Plaintiff alleges that he incurred medical and hospital bills as a result of the injuries he sustained during the Physical Altercation and demands compensatory damages. (Doc. 25, pp. 3–4, 6.) Defendants move for summary judgment to foreclose any claim Plaintiff may raise as to the Hospital Bill incurred during the July 2010 Hospitalization at CCH. (Doc. 39, pp. 3, 19.) Specifically, Defendants represent that, because Plaintiff was in custody at the time of the July 2010 Hospitalization, the Sheriff's third-party contractor—Armor Correctional Care—paid the Hospital Bill. (*Id.*; Doc. 44.) Consequently, Defendants contend that Plaintiff should be precluded from recovering medical expenses that he neither paid nor owes. (Doc. 39, pp. 3, 19.) While Plaintiff's response does not address Defendants' arguments regarding the Hospital Bill (*see* Doc. 52), Plaintiff's deposition testimony reveals that he did not know what happened to the Hospital Bill, or whether he owed any remaining balance on the bill. (Doc. 40, p. 82.)

Upon consideration, the Court finds that Defendants have met their burden of demonstrating that no genuine dispute of material fact exists on this issue. Absent affirmative evidence by Plaintiff to the contrary, Defendants are entitled to judgment as a matter of law in regards to the Hospital Bill. Therefore, Defendants' Motion is due to be

granted on the issue of Plaintiff's entitlement to compensatory damages for the Hospital Bill incurred during the July 2010 Hospitalization.[4]

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.      Counts I and II of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 41(a)(2). The Clerk is **DIRECTED** to terminate Defendant Wayne Ivey as a party to this action.

2.      Defendant's Motion for Summary Judgment (Doc. 39) is **GRANTED IN PART AND DENIED IN PART**.

    a.      The Motion is **GRANTED** with respect to the issue of Plaintiff's entitlement to compensatory damages for the hospital bill incurred during Plaintiff's hospitalization at Cape Canaveral Hospital on July 3–4, 2010. Plaintiff is not entitled to compensatory damages for this hospital bill.

    b.      The Motion is **DENIED AS MOOT** with respect to Counts I and II.

    c.      In all other respects, the Motion is **DENIED**.

3.      The case will proceed to trial on Count III.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 19, 2016.

---

[4] To the extent that Defendants' reply introduces an additional argument to preclude Plaintiff from claiming damages for previously undisclosed visionary problems stemming from the July 2010 Incident (*see* Doc. 53, pp. 2–3), the Court rejects Defendants' argument as untimely.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record